FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 28 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KEITH WHITENACK CC #13001602,

                Plaintiff,

-against-

ARMOR MEDICAL; SHERIFF SPOSATO[1], Nassau
County Correctional Facility; NASSAU COUNTY;
and CLERK OF THE COURT, Nassau County-DA
Office,

                Defendants.
------------------------------------------------------------X

**ORDER**
13-CV-2071 (SJF)(ARL)

FEUERSTEIN, District Judge:

On April 3, 2013, incarcerated *pro se* plaintiff Keith Whitenack ("plaintiff") filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants, Armor Medical ("Armor"); Sheriff Sposato of the Nassau County Correctional Facility ("Sheriff Sposato"), Nassau County ("the County") and Clerk of the Court at the Nassau County DA's Office ("the Clerk") (collectively, "defendants"), accompanied by a Prisoner Authorization Form and an application to proceed *in forma pauperis*. Since plaintiff's financial status, as set forth in the declaration in support of his application for leave to proceed *in forma pauperis*, qualifies him to commence this action without the prepayment of the filing fees, see 28 U.S.C. § 1915(a)(1), the application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, plaintiff's complaint is dismissed in part pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief.

---

[1] Plaintiff lists "Sheriff Spotta" of the Nassau County Correctional Facility as one of the defendants. The Sheriff of Nassau County, New York, is Michael J. Sposato. The Court takes judicial notice of the correct spelling of Sheriff Sposato's name, and the Clerk of Court is directed to amend the case caption accordingly.

-1-

I.  BACKGROUND

Plaintiff alleges: (1) that from December 5, 2011 through March 10, 2012, he was refused medical treatment by a doctor at the Nassau County Correctional Center ("NCCC") for an injury to his right bicep; (2) that from August 2012 through December 2012, despite the recommendation of three (3) doctors, the Armor medical director refused to send him to a dermatologist for a mole on his chest, which turned out to be malignant melonoma that needed immediate surgery, as a result of which his cancer progressed from Stage 0 or Stage I to Stage IIA; (3) that "food at the [NCCC] had feces in it numerous times," inmates are not provided toilet paper, the prices for telephone calls are too high and the commissary is overpriced and does not have "nutrients or real food;" (4) that in September or October 2012, two (2) grievances that he filed "'disappeared' and were never addressed" and his dorm was served sour or spoiled chicken salad and was not provided a replacement meal after they complained to an officer and corporal in that dorm; (5) that the grievance procedure at the NCCC "is horrible," insofar as inmates need to ask a correction officer for a grievance form and there is no civilian panel to handle grievances that are filed; (6) that the two (2) visits per week allowed pretrial detainees is insufficient and pretrial detainees should not be required to wear identification cards indicating that they are "inmates;" (7) that his requests to obtain his medical records, sick calls, doctors' notes and grievances have been ignored; (8) that correction officers at the NCCC bang the cell gates to wake the inmates up and that the banging is "approved by the sheriff and County;" (9) that Dr. Beju from Armor misdiagnosed and mistreated his complaints of not being able to urinate, as a result of which he was in pain for four (4) months, until he had "uritheral stricture" surgery in January 2013; (10) that the NCCC does not "rotate the menu" so inmates are served the same food for months, the meals are "served on unsanitary spoons" and do not meet the minimum

-2-

nutritional requirements; (11) that Armor has taken him off the pain medication previously prescribed to him for degenerated discs and two (2) herniated discs and has not prescribed proper medication or physical therapy; and (12) that Armor staff "refus[e] treatment, refus[e] meds and are not qualified to treat people." Plaintiff seeks "to be paid [an unspecified amount] for pain & suffering caused by the [NCCC], medical staff and County;" to have "changes * * * made to medical ASAP;" to have the NCCC's commissary "changed & be like Rikers & Riverhead where you can get food not just junk;" to have the prices for telephone calls be made cheaper; damages in the amount of one million dollars ($1,000,000.00) "for being left with advancing cancer & not being able to pee for 4 months;" and "to be put on Interferon for [his] liver (Hep C) or [his] Dr. said [he] could have liver failure w/in the 6 months * * *."

II. DISCUSSION

A. Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(i-iii). See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are obliged to read *pro se* complaints plaintiff liberally, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and to construe them "to raise the strongest arguments [that they] suggest[]."

Jabbar v. Fischer, 683 F.3d 54, 56 (2d Cir. 2012) (quotations, alterations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. 89, 127 S. Ct. at 2200 (quotations and citations omitted); see also Anderson News, LLC v. American Media, Inc, 680 F.3d 162, 182 (2d Cir. 2012), cert. denied, 133 S. Ct. 846, 184 L. Ed. 2d 655 (Jan. 7, 2013) (accord). "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'"Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955); see also Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) (accord). The plausibility standard requires "more that a sheer possibility that defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949; see also Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011) (accord).

B.    Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

> privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

### 1. Claims against the Clerk

A Section 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011). "Personal involvement" may be established by evidence of direct participation in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004); Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254-55 (2d Cir. 2001). "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885

F.2d 1060, 1065 (2d Cir. 1989); see also Back, 365 F.3d at 127; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law. See Costello, 632 F.3d at 48-9.

Plaintiff has not alleged the direct participation of the Clerk in any of the wrongdoing alleged in his complaint, nor any basis upon which to find the Clerk liable in a supervisory capacity. Accordingly, plaintiff's Section 1983 claims against the Clerk are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief.

### a. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although, "[l]eave to amend [ ] may be properly denied for: 'undue delay, bad faith or dilatory motive on the part of the [plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,'"Rutolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 229, 9 L. Ed. 2d 222 (1962)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008), "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Accordingly, plaintiff is granted leave to amend his complaint to replead his claims against the Clerk, **provided that any such amended complaint is filed on or before July 3, 2013, or the complaint will be deemed dismissed in its**

**entirety with prejudice and judgment shall enter in favor of the Clerk.** The amended complaint must be titled "amended complaint" and bear the same docket number as this order, and it shall be reviewed pursuant to 28 U.S.C. § 1915A. Since any amended complaint will supercede the original complaint, the amended complaint must include all valid claims and allegations plaintiff wishes to pursue against the County, Armor, Sheriff Sposato and the Clerk, as well as any other individual personally involved in the alleged constitutional violations of which plaintiff complains.

2. Commissary Pricing and Selection

Plaintiff claims that the prison commissary does not sell any nutritious foods and is overpriced. However, since "there is no constitutional right to access a prison commissary," Mitchell v. City of New York, No. 10 Civ. 4121, 2011 WL 1899718, at * 2 (S.D.N.Y. May 13, 2011); see also Davis v. Shaw, No. 08 Civ. 364, 2009 WL 1490609, at * 1 (S.D.N.Y. May 20, 2009), "the prices and product selections offered by prison food vendors cannot give rise to a constitutional violation." Mitchell, 2011 WL 1899718, at *2; see also Miller v. County of Nassau, No. 12-cv-4164, 2012 WL 4741592, at * 7 (dismissing claims regarding commissary pricing and selection pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A); Davis, 2009 WL 1490609, at * 1 (holding that the plaintiff's complaints regarding the prices and selection at the prison commissary did not state a constitutional violation). Accordingly, plaintiff's claim regarding commissary pricing and selection is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.

### 3. Prison Telephone Pricing

Plaintiff also claims that the charges for use of the prison telephones are overpriced. Assuming, *arguendo*, that prisoners have a constitutional right to telephone access, compare Arsberry v. Illinois, 244 F.3d 558, 565 (7th Cir. 2001) (holding that claim challenging the cost of telephone service provided to inmates did not state a constitutional violation); U.S. v. Footman, 215 F.3d 145, 155 (1st Cir. 2000) ("Prisoners have no per se constitutional right to use a telephone * * *."); Shariff v. Coombe, 655 F. Supp. 2d 274, 301 (S.D.N.Y. 2009) (dismissing Eighth Amendment claim regarding inaccessibility of telephones in prison because it did not deny the prisoners "a basic human need."); Castillo v. Hayman, No. Civ.A. 06-1417, 2006 WL 2241658, *4 (D.N.J. Aug. 3, 2006) (finding no Eighth Amendment violation for expensive telephone service because it "does not deprive [a prisoner] of a basic human need."); Griffin v. Cleaver, No. 3:03cv1029, 2005 WL 1200532, at * 6 (D. Conn. May 18, 2005) (holding that a prisoner "has not constitutional right to telephone use * * *."), with Johnson v. State of California, 207 F.3d 650, 656 (9th Cir. 2000) (holding that prisoners have a First Amendment right to telephone access subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system), "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." Johnson, 207 F.3d at 656; see also Holloway v. Magness, 666 F.3d 1076, 1080 (8th Cir. 2012), cert. denied, 133 S. Ct. 130, 184 L. Ed. 2d 62 (2012) (holding that a jail has no First Amendment obligation to provide telephone service "at a particular cost to users.") Moreover, plaintiff does not allege any facts to support a reasonable inference that the telephone rates charged are "so exorbitant as to deprive prisoners of phone access altogether." Johnson, 207 F.3d at 656. Therefore, plaintiff's claim that charges for

use of the prison telephones are overpriced is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief. See, e.g. Johnson, 207 F.3d at 656 (holding that the district court properly dismissed with prejudice claims that prisoners were overcharged for telephone use).

### 4. Reduction in Visitations

Plaintiff also challenges the reduction in visitations allowed prisoners at the NCCC from three (3) visits per week to two (2) visits per week in 2008. Assuming that prisoners have a First Amendment right to visitation, see Overton v. Bazzetta, 539 U.S. 126, 131-32, 123 S. Ct. 2162, 154 L. Ed. 2d 514 (2003), "that right could not require that visits * * * be permitted on demand, but rather must be subject to reasonable restrictions on the time, place and manner of visits." Mills v. Fischer, 497 Fed. Appx. 114, 116 (2d Cir. Sept. 21, 2012), cert. denied, 133 S. Ct. 1255, 185 L. Ed. 2d 200 (Feb. 19, 2013) (summary order). "[I]nstitutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives of the corrections system itself, require that some limitation be placed on [prison] visitations." Pell v. Procunier, 417 U.S. 817, 826, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989). "So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved * * * in drawing such lines, prison officials must be accorded latitude." Id.; see also Henry v. Coughlin, 940 F. Supp. 639, 642 (S.D.N.Y. 1996). So long as "alternative channels of communication" remain open to a prisoner, and the restriction on communication "operates in a neutral fashion," a restriction on one manner in

which prisoners can communicate with persons outside of prison "does not abridge any First Amendment freedoms retained by prison inmates." Pell, 417 U.S. at 827-28, 94 S. Ct. 2800; see also Ramos v. Lamm, 639 F.2d 559, 581 (10th Cir. 1980) ("So long as * * * alternative channels of communication are open to prison inmates * * * numerical and qualitative restrictions on inmates' visitors are not unreasonable.")

Moreover, "limitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional rights." Patterson v. City of New York, No. 11 Civ. 7976, 2012 WL 3264354, at * 7 (S.D.N.Y. Aug. 9, 2012). This is true for pretrial detainees as well." Id. Since, *inter alia*: (1) alternative channels of communication remain available to plaintiff, i.e., via telephone or mail; (2) there are no allegations to support an inference that the reduction in weekly visitation does not operate in a neutral fashion; (3) plaintiff does not allege that the visitation policy was changed in 2008 for some improper purpose; (4) "[t]he reduction of visitation hours is precisely the sort of decision by prison officials regarding the operation of the [correctional] facility with which courts should not interfere," Windley v. Cuomo, No. 91 Civ. 3774, 1992 WL 123172, at * 1-2 (S.D.N.Y. May 27, 1992); (5) neither state nor federal law "forbids reasonable regulation of visiting hours by prison officials," id.; and (6) the one (1) day reduction in weekly visitations allowed to prisoners at the NCCC does not exceed the bounds of reasonableness, plaintiff's claim relating to the reduction in weekly visitations in 2008 is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief. See, e.g. Greenwaldt v. Coughlin, No. 93 Civ. 6551, 1995 WL 232736, at * 7 (S.D.N.Y. Apr. 19, 1995) (dismissing claims regarding reduction in visitation policy with prejudice); Windley, 1992 WL 123172, at * 1-2 (dismissing claims that reduced visitation violated

-10-

prisoners' First, Eighth or Fourteenth Amendment rights).

     5.    Deliberate Indifference Claims

Prison officials have a duty, imposed under either the Eighth Amendment with respect to convicted prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with respect to pretrial detainees in federal custody and state custody, respectively,[2] to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted). A Section 1983 claim challenging prison conditions rises to a constitutional violation only when two (2) requirements are met. See Farmer, 511 U.S. at 834, 114 S. Ct. 1970. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (quotations and citation omitted); see also Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012). The second requirement is that a prison official must have acted or failed to act with a "sufficiently culpable state of mind," Farmer, 511 U.S. at 834, 114 S. Ct. 1970; see also Jabbar, 683 F.3d at 57, i.e., with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834, 114 S. Ct. 1970; see also Jabbar, 683 F.3d at 57. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835, 114 S. Ct. 1970; see also Jabbar, 683 F.3d at 57. "[A] prison official cannot be found liable * * * for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

---

[2] The same "deliberate indifference" standard applies to claims challenging prison conditions regardless of whether the claim is brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments. See Caiozzo v. Koreman, 581 F.3d 63, 70-1 (2d Cir. 2009).

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970; see also Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005). The prison official must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842, 114 S. Ct. 1970; see also Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

a. Quality, Quantity and Variety of Food Served

Although prison officials have a duty to serve prisoners "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); see also Vogelfang v. Capra, 889 F. Supp. 2d 489, 509 (S.D.N.Y. 2012) (accord), "assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents." Word v. Croce, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001). Moreover, although "the intentional failure to provide an inmate with a medically prescribed diet for a prolonged period of time can state a viable [deliberate indifference] claim," Davidson v. Desai, 817 F. Supp. 2d 166, 189 (W.D.N.Y. 2011); see also Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 180 (N.D.N.Y. 1996), "[a]bsent religious or medically peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated, vegetarian or otherwise." Word, 169 F. Supp. 2d at 226 (quotations, alterations and citation omitted). "Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu." Id.

Plaintiff does not allege that he was deprived of a medically indicated or religiously necessary diet and his mere discontent with the lack of variety in the menu is insufficient to state

-12-

a claim for relief. See, e.g. Word, 169 F. Supp. 2d at 226 (holding that because there was no medical or religious reason for the diet that the plaintiff requested, the prison officials' refusal to provide the diet did not constitute deliberate indifference). Although, liberally read, plaintiff's complaint can be read to allege that he was deprived of a nutritionally adequate diet, there are no allegations from which it may plausibly be inferred that plaintiff's health was in immediate danger based upon the diet provided to him nor that any defendant knew that the diet provided was inadequate or likely to inflict harm upon plaintiff. See, e.g. O'Keefe v. Goord, 77 Fed. Appx. 42, 43-4 (2d Cir. Oct. 2, 2003) (summary order) (affirming dismissal of the plaintiff's Eighth Amendment claim where although he alleged that his diet was nutritionally inadequate, "he failed to allege that his health was in immediate danger based on the diet provided to him," nor that the defendants knew that the diet provided was inadequate or likely to inflict pain or suffering); Gaines v. Armor Health Care, Inc., No. 12-cv-4666, 2012 WL 5438931, at * 5 (E.D.N.Y. Nov. 2, 2012) (holding that even assuming that a seafood-free diet was medically indicated for the plaintiff, there was no deliberate indifference absent allegations that the failure to provide such a diet resulted in a sufficiently serious condition or that the defendants acted or failed to act with a culpable state of mind). Accordingly, plaintiff's claims regarding the quality, quantity and variety of prison food are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.

b. Spoiled Chicken Salad Claim

In essence, plaintiff alleges that he was deprived of one (1) meal on one (1) occasion while incarcerated at the NCCC because he was not provided with an alterative meal when he

-13-

had been served spoiled chicken salad. Although a State may "transgress[] the substantive limits on state action set by the Eighth Amendment and the Due Process Clause" when it fails "to provide for [the] basic human needs– *e.g.*, food, clothing, shelter, medical care, and reasonable safety [of a convicted prisoner or pretrial detainee, respectively]," DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), "a deprivation of food and water during detention that only lasted a few hours [does] not rise to the level of a constitutional violation." Simmons v. Kelly, No. 06 Civ. 6183, 2009 WL 857410, at * 7 (S.D.N.Y. Mar. 31, 2009). Since Plaintiff cannot establish a "depriv[ation] of rights, privileges, or immunities secured by the Constitution or laws of the United States," Cornejo, 592 F.3d at 127, with respect to his claim that he was not provided an alternative meal after being served spoiled chicken salad on one (1) occasion, he cannot state a Section 1983 claim as a matter of law. Accordingly, plaintiff's claim regarding the failure to provide him an alternative meal after being served spoiled chicken salad is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.

c. Identification of Pretrial Detainees as "Inmates"

Plaintiff's challenge to the requirement that pretrial detainees wear identification cards identifying them as "inmates" likewise does not raise a constitutional violation as it does not relate to the deprivation of a "basic human need", i.e., food, clothing, shelter, medical care, and safe and sanitary living conditions, see Walker v. Schult, — F.3d —. 2013 WL 2249159, at * 4 (2d Cir. May 23, 2013) ("[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions.");

-14-

Jabbar, 683 F.3d at 57 (accord), nor does it expose plaintiff to "an unreasonable risk of serious damage to [his] future health." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). Plaintiff cannot satisfy the objective element of a deliberate indifference claim because the requirement that pretrial detainees wear identification cards identifying them as "inmates" is not sufficiently serious, i.e., it does not "violate contemporary standards of decency." Id. Accordingly, plaintiff's claim regarding the requirement that pretrial detainees wear identification cards identifying them as "inmates" is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim for relief.[3]

III.    Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted; plaintiff's claims regarding commissary pricing and selection, prison telephone prices, the 2008 reduction in visitations, the quality, quantity and variety of food provided to prisoners, the failure to provide an alternative meal after being served spoiled chicken salad and the requirement that pretrial detainees wear identification cards identifying them as "inmates" are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief; and the complaint is *sua sponte* dismissed without prejudice as

---

[3] In any event, the designation of a pretrial detainee as an "inmate" may not be improper. If plaintiff is a pretrial detainee in federal custody, 28 C.F.R. § 500.1 defines "inmate," in relevant part, as "all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with * * * offenses against the United States; and persons held as * * * detainees * * *." Even if plaintiff is a pretrial detainee in state custody, his designation as an "inmate" may not be improper. See, e.g. Walker v. Superintendent, No. 06-cv-1932, 2009 WL 5166270, at * 5 (E.D.N.Y. Dec. 28, 2009) (rejecting plaintiff's claim that as a pretrial detainee he was not an "inmate" within the meaning of New York Penal Law § 240.32).

against the Clerk, **provided that plaintiff file an amended complaint in accordance with this order on or before July 3, 2013, or the complaint will be deemed dismissed in its entirety with prejudice as against the Clerk and judgment shall enter in favor of the Clerk.** The Clerk of Court shall issue summonses for Armor, Sposato and the County; cause the United States Marshal Service to serve copies of the summonses, complaint, and this Order upon those defendants without the prepayment of fees; and serve a copy of this Order upon plaintiff forthwith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

                                                s/ Sandra J. Feuerstein

                                                Sandra J. Feuerstein
                                                United States District Judge

Dated: May 28, 2013
       Central Islip, New York