UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KEITH WHITENACK,

                              Plaintiff,

            -against-

ARMOR MEDICAL [sic], NCCC-SHERIFF
SPOSATO and NASSAU COUNTY,

                              Defendants.
----------------------------------------------------------X
FEUERSTEIN, District Judge

**ORDER**
13-cv-2071(SJF)(ARL)

On April 3, 2013, incarcerated *pro se* plaintiff Keith Whitenack ("plaintiff") filed a civil

rights complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants

Armor Correctional Health Services of New York, Inc. ("Armor"), i/s/h as Armor Medical;

Sheriff Sposato of the Nassau County Correctional Center ("NCCC"); Nassau County ("the

County"); and the Clerk of the Court at the Nassau County DA's Office ("the Clerk"),

accompanied by, *inter alia*, an application to proceed *in forma pauperis*. By order dated May 28,

2013, *inter alia*: (1) plaintiff's application to proceed *in forma pauperis* was granted; (2) certain

of plaintiff's claims challenging the conditions of his confinement at the NCCC were *sua sponte*

dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure

to state a claim for relief; (3) the complaint was *sua sponte* dismissed without prejudice as

against the Clerk; and (4) plaintiff was granted leave to file an amended complaint repleading his

claims against the Clerk on or before July 3, 2013.

On June 28, 2013, plaintiff filed an amended complaint against Armor, Sheriff Sposato

1

and the County (collectively, "defendants") pursuant to Section 1983.[1] Defendants now move to

dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim for relief. Although plaintiff sought, and was granted, an extension of

time to file a response to defendants' motion, he never served or filed any opposition to the

motion to dismiss. For the reasons set forth below, defendants' motion to dismiss is granted.


I.    BACKGROUND

A.    Factual Allegations[2]

Plaintiff alleges that while incarcerated at the NCCC between August 2012 and

December 2012, he "was denied a dermatologist, even after 3 doctors [recommended] it[,]" (Am.

Compl., ¶ IV), and he "was misdiagnosed for urination problems, put on Cipro & other

medications not needed." (Id.) Specifically, plaintiff alleges: (1) that he first filed a sick call

request in September 2012 "for a dark, misshaped mole on [his] left chest[,]" (id. at 6); (2) that

the female doctor who examined him (a) said (i) the mole "displayed 3 of the 4 signs of possible

skin cancer" and (ii) that he "need[ed] to see a dermatologist immediately," and (b) "filed a

request to Armor Director to have a derm console [sic][,]" (id.); (3) that he was also "having an

extremely difficult time urinating and was in terrible pain all the time[,]" (id.), as a result of

---

[1] In his amended complaint, plaintiff indicates that he "[d]id not intend to include [the Clerk] on [l]awsuit[,] [he] [j]ust thought a copy was to be sent to [them]." (Amended Complaint ["Am. Compl."], at 11). Accordingly, pursuant to the May 28, 2014 order, the claims against the Clerk are dismissed with prejudice.

[2] The following facts are taken from the amended complaint and considered to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

2

which he "was put on Cipro & told it was a urinary tract infection[,]" (id.); (4) that he was

provided no relief from the Cipro, so he "continued to [f]ile sick calls till [sic] [he] was taken off

Cipro & told 'they don't know what the problem is[,]" (id.); (5) that Dr. Beju told him to "bail

out because Armor will not let [him] see a urologist," (id.), leaving him "in terrible pain [and]

not being able to pee, sometimes at all * * *[,]" (id.); (6) that in September and October 2012, he

"[c]ontinued to file sick calls to address the rapidly growing 'mole' on [his] chest[,]" (id.); (7)

that he was seen by Drs. Beju and Francis, who both (a) "expressed their concerns about the

rapid growth, color, shape [and] 'raised' appearance[,]" (id. at 7), and (b) told him that "they will

follow up on the Derm. Console [sic] because [he] needed to see one & get it biopsyed [sic] asap

[sic][,]" (id.); (8) that in October 2012, Dr. Francis told him that the Armor director denied the

request for a dermatological consult and that he "was not going to get the proper medical

attention and need[ed] to bail out & see a derm[atologist] ASAP[,]" (id.); (9) that the grievances

he filed "against medical" between September and December 2012 "were either denied or

'lost'[,]" (id.); and (10) that he took a plea agreement on December 5, 2012 "just to get out to

address medical conditions" because he "was deathly afraid for [his] health & life[,]" (id. at 8).

According to plaintiff, upon his release from the NCCC, he eventually needed two (2)

surgeries for "Stage 2A" malignant melanoma and also needed surgery for "ureteral [sic]

stricture." (Am. Compl., ¶ IV). Specifically, plaintiff alleges, *inter alia*: (1) that on December

18, 2012, a biopsy of the mole on his chest was performed at "Easter [sic] Long Island Hospital,"

(id. at 8), which "came back positive as Stage IIA [malignant] melanoma skin cancer," (id.); (2)

that the doctor, Dr. Simon, told him (a) that "they need[ed] to operate again to go 2 cm from the

nearest margin[,]" (id.), and (b) that he "was most likely Stage 0 or 1 when [he] told Armor & the

3

[NCCC], and this type of cancer was extremely dangerous and fast moving[,]" (id. at 8-9); (3) that in January 2012, he saw an oncologist and dermatologist at Stony Brook Hospital, who "both agreed that there was no way the [NCCC], & Armor should've ignored this[,]" (id. at 9); and (4) that in February 2012, (a) "[t]hey operated again going deeper to check for matastisized [sic] or more cancer cells[,]" (id.), and (b) "they told [him] [he] needed to see a dermatologist in 3 months for a follow up and to wear sunscreen anytime [he] was outside[,]" (id.).

Plaintiff alleges that from March 2013 until "the present," i.e., the date he filed the amended complaint, he was "[d]enied dermatologist follow up even after informing [A]rmor & medical & [the NCCC] of the cancer surgery & denied Sunblock to use during 1 hour outdoor recreation." (Am. Compl., ¶ IV; see also id. at 9 ("This is a basis of another Notice of claim against Armor & NCCC for failing to provided [sic] me [with] a f/u Dermatologist appointment and refusal to give me sunscreen during my mandatory 1 hour recreation period while I'm now [i]ncarcerated. I was told 'find some shade!'" (emphasis omitted)). According to plaintiff, in March 2013, he started filing sick call requests and grievances "for sunscreen & dermatologist F/u, providing all medical info to Armor staff including Pathology report[,]" but he's "been told no sunscreen & no dermatology refferal [sic]." (id. at 9-10).

In addition, plaintiff alleges that he is "[s]till being denied treatment for [his] liver enzymes [and] [n]eed[s] to be put on Interferon[.]" (Am. Compl., ¶ IV). According to plaintiff, his "liver enzymes are [twenty times] what the normal level is[,]" (id. at 10), as a result of which he "was supposed to start Interferon for [his] liver in March [2013] but had to get sentenced[,]" (id.), and "Armor" told him that he "would only get medication if [he] was already on it[,]" (id.). Plaintiff alleges that he filed "numerous sick calls and grievances with no result." (Id.)

4

Plaintiff claims that Armor failed to "provid[e] basic medical needs" and that Sheriff

Sposato and Nassau County failed to "provid[e] medical needs, even after they learned, through

grievances, that Armor was not providing proper medical care." (Am. Compl., ¶ IV). Plaintiff

alleges that he named Sheriff Sposato "because he allows Armor to continue practicing [] in the

[NCCC] * * *." (Id. at 10).

Plaintiff claims the following injuries:

> "[C]ancer developing from Stage 0-Stage 2A, needed immediate
> [b]iopsy and removal. Severe psychological effects from being
> ignored medical treatment. 3 surgerys [sic], being left in terrible
> pain in [his] groin & stomach for 4 months when urologist was
> needed. Continued risk for cancer spreading w/ no sunblock.
> Liver pain all the time, fatigue, tiered [sic] all the time & still they
> do nothing for [him]. Need dermatologist follow up and urology
> follow up, Interferon treatment, sunblock, no treatment received.
> Requesting to be paid for pain suffering, and health issues."

(Am. Compl., ¶ IV.A).

Plaintiff seeks "proper medical treatment" until he is discharged from the NCCC[3] and

compensatory damages in the amount of one million dollars ($1,000,000.00). (Am. Compl., ¶

V).

B.    Procedural History

On April 3, 2013, plaintiff filed a civil rights complaint in this Court against defendants

and the Clerk pursuant to Section 1983, accompanied by an application to proceed *in forma*

---

[3] In the amended complaint, plaintiff alleges that he is "to be released on Sept. 15[,] 2013[.]" (Am.
Compl. at 11). Thus, since plaintiff has now been released from the NCCC, his claim seeking
"proper medical treatment" is dismissed as moot.

*pauperis*. By order dated May 28, 2013, *inter alia*: (1) plaintiff's application to proceed *in forma pauperis* was granted; (2) plaintiff's claims regarding (a) commissary pricing and selection, (b) prison telephone prices, (c) the 2008 reduction in visitations, (d) the quality, quantity and variety of food provided to prisoners, (e) the failure to provide an alternative meal after being served spoiled chicken salad and (f) the requirement that pretrial detainees wear identification cards identifying them as "inmates" were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief; (3) the complaint was *sua sponte* dismissed without prejudice as against the Clerk; and (4) plaintiff was granted leave to file an amended complaint repleading his claims against the Clerk on or before July 3, 2013.

On June 28, 2013, plaintiff filed an amended complaint against defendants pursuant to Section 1983. Defendants now move to dismiss plaintiff's Section 1983 claims against them in the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. Although plaintiff sought, and was granted, an extension of time to file a response to defendants' motion, he never served or filed any opposition to the motion to dismiss.

## II. DISCUSSION

### A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

6

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d

7

55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013) (accord). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014).

B.    Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege (1) that the

challenged conduct was "committed by a person acting under color of state law," and (2) that

such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the

Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)

(citing Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct.

1497, 1501-02, 182 L. Ed. 2d 593 (2012).


1.    Section 1983 Claims against Sheriff Sposato

A Section 1983 claim must allege the personal involvement of any individual defendant

in the purported constitutional deprivation. See Spavone v. New York State Dep't of Corr.

Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations

and citation omitted)); Grullon, 720 F.3d at 138-39 ("[I]n order to establish a defendant's

individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the

defendant's personal involvement in the alleged constitutional deprivation.") "Personal

involvement" may be established by evidence of a defendant's direct participation in the alleged

constitutional deprivation, or by evidence of a supervisory official's "(1) failure to take corrective

action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom

fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit

unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information

regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d

733, 753 (2d Cir. 2003); see also Raspardo v. Carlone, — F.3d —, 2014 WL 4958157, at * 15

(2d Cir. Oct. 6, 2014). "The fact that [a defendant] was in a high position of authority is an

9

insufficient basis for the imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law. See Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011) (holding that a failure to "allege facts establishing the personal involvement of the individual [d]efendants * * * is fatal to [a] claim under 42 U.S.C. § 1983.")

The only individual named as a defendant in this action is Sheriff Sposato and plaintiff does not allege his direct participation in any of the wrongdoing alleged in his amended complaint. Rather, plaintiff seeks to impose Section 1983 liability upon Sheriff Sposato for his purported failure to "provid[e] medical needs, even after [he] learned, through grievances, that Armor was not providing proper medical care[,]" (Am. Compl., ¶ IV), and "because he allows Armor to continue practicing [] in the [NCCC] * * *." (Id. at 10). Such allegations are insufficient to impose Section 1983 liability upon Sheriff Sposato in a supervisory capacity. See, e.g. Vogelfang v. Capra, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) (holding that allegations that the Commissioner and Superintendent of the Department of Corrections failed to respond to letters from plaintiff were insufficient to establish their "personal involvement for the purposes of section 1983 liability." (quotations and citation omitted)); Tafari v. McCarthy, 714 F. Supp. 2d 317, 359 (N.D.N.Y. 2010) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official failed to remedy the violation after learning of it through a report or appeal or allowed the custom or policy to continue after learning of it." (quotations and citation omitted)); Rosales v. Kikendall, 677 F. Supp. 2d 643, 650

10

(W.D.N.Y. 2010) ("[A] failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim."); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (finding that a letter to the Commissioner of the Department of Corrections complaining that the plaintiff was denied certain medical treatment "cannot create personal liability."); Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (holding that allegations that a prisoner's complaints were ignored by a supervisory official are insufficient to establish liability under Section 1983). "[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." Johnson, 234 F. Supp. 2d at 363 (quotations and citation omitted); accord Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1234 (S.D.N.Y. 2003). "[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." Vogelfang, 889 F. Supp. 2d at 502 (quoting Styles v. Goord, 431 F. App'x 31, 33 (2d Cir. June 23, 2011) (summary order)).

Since plaintiff "has pled no facts, beyond [Sheriff Sposato's] presumed receipt of [grievances] and [his] * * * position[] atop the [NCCC], implicating [him] in any violation described in [his] [amended] complaint[,] [he] has * * * failed to plausibly plead [Sheriff Sposato's] personal involvement in any infringement of [his] constitutional rights." Vogelfang, 889 F. Supp. 2d at 502. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against Sheriff Sposato pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 claims against Sheriff Sposato are dismissed in their entirety for failure to state a claim for relief. Moreover, insofar as, *inter*

11

*alia*, plaintiff has not sought leave to amend his amended complaint, and, indeed, has not even opposed defendants' motion to dismiss, and he has already been granted leave to amend the complaint once, the dismissal of his Section 1983 claims against Sheriff Sposato is with prejudice.

2.  Section 1983 Claims against the County[4]

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), cert. denied, 134 S. Ct. 125, 187 L. Ed. 2d 255 (2013); accord Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, —

---

[4] To the extent the amended complaint asserts any claims directly against the NCCC, such claims fail because "'[u]nder New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" Burbar v. Incorporated Vill. of Garden City, 961 F. Supp. 2d 462, 471 (E.D.N.Y. 2013) (quoting Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); see also Robischung-Walsh v. Nassau Cnty. Police Dep't, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 F. App'x 38 (2d Cir. Apr. 29, 2011). Since the NCCC is an administrative arm of the County, see, e.g. Jones v. Nassau County Corr. Inst., Nos. 14-cv-1217, 14-cv-1562, 2014 WL 1277908, at * 4 (E.D.N.Y. Mar. 26, 2014) (holding that the Nassau County Jail is merely an administrative arm of the County of Nassau and "lack[s] any independent legal identity apart from Nassau County"); Thomas v. Armor of Med., No. 13-cv-5786, 2014 WL 112374, at * 3 (E.D.N.Y. Jan. 9, 2014) (dismissing claim against the Nassau County Jail because it "has no legal identity separate and apart from Nassau County"); Hawkins v. Nassau Cnty. Corr. Facility, 781 F. Supp. 2d 107, 109 at n. 1 (E.D.N.Y. 2011) (holding that the NCCC "is an 'administrative arm[]' of * * * the County of Nassau, and thus lacks the capacity to be sued as a separate entity" (brackets in original)), it lacks the capacity to be sued. Accordingly, the branch of defendants' motion seeking dismissal of any claims asserted against the NCCC in the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and any claims asserted against the NCCC in the amended complaint are dismissed with prejudice for failure to state a claim for relief.

U.S. —, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles Cnty., Calif. v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, — U.S. —, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S. Ct. 2018)); Humphries, — U.S. —, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, — U.S. —, 131 S.Ct. at 1359.

In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking

13

official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." Id.; see also Cash, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference[.]" (quotations, brackets, ellipsis and citation omitted)). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); see also Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (accord).

The amended complaint is devoid of any factual allegations from which it may reasonably be inferred that a municipal policy or custom caused the conduct of which plaintiff complains. Specifically, plaintiff has not alleged facts from which to reasonably infer: (1) the existence of a formal policy which is officially endorsed by the County or the NCCC; (2) actions taken or decisions made by County or NCCC policymaking officials which caused the alleged violation of his civil rights; (3) a County or NCCC practice so persistent and widespread as to practically

14

have the force of law; or (4) a failure by County or NCCC policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against the County pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 claims against the County are dismissed in their entirety for failure to state a claim for relief. Moreover, insofar as, *inter alia*, plaintiff has not sought leave to amend his amended complaint, and, indeed, has not even opposed defendants' motion to dismiss, and he has already been granted leave to amend the complaint once, the dismissal of his Section 1983 claims against the County is with prejudice.

### 3. Section 1983 Claims against Armor

#### a. Monell Liability

Plaintiff does not assert claims against any individual employee or official of Armor, only against Armor, itself, in the amended complaint.

Although "Armor is a private company that provides medical services for inmates at the [NCCC] pursuant to a contract with the Nassau County Sheriff's Department," (Declaration of John J. Doody, Esq., ¶ 3), "anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." Filarsky v. Delia, --- U.S. ----, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012); see also Hollander v. Copacabana Nightclub, 624 F.3d 30, 33 (2d Cir. 2010). Assuming, *arguendo*, that Armor was acting under color of state law in rendering medical services to plaintiff at the NCCC, see, e.g. Feder v. Sposato, No. 11-cv-193, 2014 WL 1801137, at * 6 (E.D.N.Y. May 7, 2014) ("Because Armor was hired to fulfill the state's constitutional

15

obligation to provide necessary medical care for its inmates, [it] [was] 'acting under the color of state law' for purposes of Section 1983"), "[p]rivate employers are not liable under Section 1983 for the constitutional torts of their employees * * * unless the plaintiff proves that action pursuant to official . . . *policy* of some nature caused a constitutional tort." Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); see also Green v. City of New York, 465 F.3d 65, 82 (2d Cir. 2006) (finding that a hospital was not vicariously liable for any constitutional torts that its employees may have committed). "Although Monell dealt with municipal employers, its rationale has been extended to private businesses [acting under color of state law]." Rojas, 924 F.2d at 409; see also Bektic-Marrero v. Goldberg, 850 F. Supp. 2d 418, 432 (S.D.N.Y. 2012) (holding that Monell has been extended to private Section 1983 defendants acting under color of state law).

Plaintiff has not alleged facts from which to reasonably infer: (1) the existence of a formal policy to deny inmates at the NCCC, including himself, their "basic medical needs" which is officially endorsed by Armor; (2) actions taken or decisions made by Armor policymaking officials which caused the alleged violation of his civil rights, with the exception of his claim alleging that Armor's director denied the request that he be referred to a dermatologist for consultation; (3) an Armor practice so persistent and widespread as to practically have the force of law; or (4) a failure by Armor policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against Armor pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that, with the exception of plaintiff's Section 1983 claim

16

alleging that Armor's director denied the request that plaintiff be referred to a dermatologist for consultation, plaintiff's Section 1983 claims against Armor are dismissed for failure to state a claim for relief. Moreover, insofar as, *inter alia*, plaintiff has not sought leave to amend his amended complaint, and, indeed, has not even opposed defendants' motion to dismiss, and he has already been granted leave to amend the complaint once, the dismissal of his Section 1983 claims against Armor is with prejudice.

### b.    Deliberate Indifference

Prison officials have a duty, imposed under either the Eighth Amendment with respect to convicted prisoners or the Due Process Clauses of the Fifth and Fourteenth Amendments with respect to pretrial detainees in federal custody and state custody, respectively,[5] to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations and citations omitted). A claim for deliberate indifference to medical needs has both an objective and subjective component. See Johnson, 412 F.3d at 403; Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). "Subjectively, the

---

[5] The same "deliberate indifference" standard applies to claims challenging prison conditions regardless of whether the claim is brought under the Eighth Amendment or the Due Process Clauses of the Fifth and Fourteenth Amendments. See Caiozzo v. Koreman, 581 F.3d 63, 70-1 (2d Cir. 2009).

official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011) (quoting Hathaway, 99 F.3d at 553); see also Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind.") "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006); see also Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (accord); Caiozzo, 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and * * * was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)).

Assuming, *arguendo*, that the amended complaint alleges facts sufficient to establish the objective component of a deliberate indifference claim with respect to plaintiff's skin cancer claim, the factual allegations are insufficient to satisfy the subjective component of a Section 1983 deliberate indifference claim with respect to Armor's director's denial of the request for plaintiff to be referred to a dermatologist for consultation. The only facts alleged in the amended complaint with respect to the Armor director are: (1) that in or around September 2012, an unidentified female doctor "filed a request to the Armor Director to have a [dermatological consultation]" for plaintiff, (Am. Compl. at 6); and (2) that in October 2012, approximately one (1) month later, Dr. Francis told plaintiff that the Armor director denied the request for a dermatological consultation. It cannot reasonably be inferred from those factual allegations that the Armor director acted with the requisite state of mind in denying the request that plaintiff be

18

referred to a dermatologist for consultation, i.e., that he or she knew that there existed a substantial risk of serious harm to plaintiff absent his referral to a dermatologist for consultation and consciously disregarded that risk in denying the referral. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claim against Armor alleging that Armor's director was deliberately indifferent to his medical needs in denying the request that he be referred to a dermatologist for consultation pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and that claim is dismissed for failure to state a claim for relief. Moreover, insofar as, *inter alia*, plaintiff has not sought leave to amend his amended complaint, and, indeed, has not even opposed defendants' motion to dismiss, and he has already been granted leave to amend the complaint once, the dismissal of this Section 1983 claim against Armor is with prejudice.

C.     Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391-92, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866-1867, 173 L. Ed. 2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court."). The court must "consider and

19

weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Lundy, 711 F.3d at 117-18 (accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7; Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)); Lundy, 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination.")

In light of the dismissal of all federal claims in this action on the pleadings and prior to any discovery, and upon consideration of all relevant factors, *i.e.*, judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over any remaining state law claims in this action. Accordingly, to the extent that the amended complaint asserts any state law claims against defendants, those claims are *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order**, unless a longer tolling period is otherwise provided under state law.[6]

---

[6] In light of the dismissal of all claims against defendants in this action, it is unnecessary to consider defendants' remaining contentions.

III.  CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's Section 1983 claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent set forth herein; plaintiff's Section 1983 claims against defendants are dismissed in their entirety with prejudice; and any state law claims asserted against defendants in the amended complaint are *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  The Clerk of the Court shall enter judgment in favor of defendants, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:  October 30, 2014
        Central Islip, New York

21